IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

WILLIE MURRY JUQAN MUHUMMAD,                                    PLAINTIFF
ADC #257034

v.                                 4:21CV00483-LPR-JTK

COBB, et al.                                                   DEFENDANTS

PROPOSED FINDINGS AND RECOMMENDATIONS

INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky.   Any party may file written objections to all or part of this Recommendation.   If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.   By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I.     Introduction

Willie Murry JuQan Muhummad ("Plaintiff") is incarcerated at the Maximum Security Unit of the Arkansas Division of Correction ("ADC").   Plaintiff's claims arise from the time when Plaintiff was incarcerated in Pulaski County Detention Center.   Plaintiff sued multiple Defendants alleging violations of his constitutional rights.   (Doc. Nos. 1, 6).   Plaintiff's claims against Defendants Johnson, Higgins, and Kendrick have been dismissed.   (Doc. Nos. 7, 13, 26). Plaintiff's claims against Defendants Matthew Cobb and Scott Thomisee (collectively, "Defendants") remain pending.

Defendants have filed a Motion for Summary Judgment on the merits of Plaintiff's claim, Brief in Support, and Statement of Facts. (Doc. Nos. 39-41). Plaintiff has responded. (Doc. Nos. 46-47).

For the reasons set out below, the Court recommends Defendants' Motion be granted and judgment be entered in their favor.

## II.    Plaintiff's Amended Complaint

Plaintiff sued Defendants in their personal capacities only. (Doc. No. 6 at 1-2). According to Plaintiff, on May 8, 2021, Defendant Cobb used excessive force against Plaintiff. (Id. at 4). Plaintiff had his arm out of the trap in his cell door. (Id.). Defendants told Plaintiff to open his cell door and then walked into Plaintiff's cell. (Id.). Plaintiff says he was trying to talk to Defendant Thomisee about chips that were not in Plaintiff's Ramadan bag, when suddenly Defendant Cobb pushed Plaintiff towards Plaintiff's bed and began hitting him in the face for no reason. (Id.). Defendant Cobb then told Defendant Johnson to spray Plaintiff with mace, which Defendant Johnson did. (Id.). Defendant Thomisee allegedly did nothing to protect Plaintiff during the incident. (Doc. No. 6 at 4). Plaintiff alleges Defendants' actions violated Plaintiff's constitutional rights. (Id.). Plaintiff seeks damages. (Id. at 6).

While Plaintiff said the incident occurred on May 8, 2021, Plaintiff was off by one day; the incident took place on May 9, 2021. The Court notes that the May 9 incident was captured by body cameras worn by different officers. The incident is described in detail below. The Court also notes that the video reflects Plaintiff fighting against Defendant Cobb. Plaintiff later pled

guilty in the Circuit Court of Pulaski County, Arkansas, to second degree battery of a law enforcement officer.   State v. Murry, 60CR-21-2372.[1]

## III.     Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."   Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.   Failure to properly support or address the moving

---

[1]  The Court may take judicial notice of the proceedings in Plaintiff's state criminal case because they are directly related to the issues here.   Conforti v. United States, 74 F.3d 838, 840 (8th Cir. 1996).

party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV.    Discussion

Plaintiff alleges Defendants used excessive force against him.    Defendants argue that Plaintiff's claim is barred under Heck v. Humphrey, among other arguments.

### A.    Excessive Force

Plaintiff identified himself as a pretrial detainee at the time of the incident.    (Doc. No. 6 at 3).    As such, Plaintiff's claims fall under the Fourteenth Amendment.    Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010).    In analyzing a pretrial detainee's excessive force claims, courts in the Eighth Circuit apply an objective reasonableness standard.    Kingsley v. Hendrickson, 576 U.S. 389, 402-03 (2015); Buckley v. Hennepin Cnty., 9 F.4th 757, 762 (8th Cir. 2021).    "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable" under the circumstances.    Kingsley, 576 U.S. at 396–97.

> Factors relevant to assessing the objective reasonableness of force used by officers include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Ryan v. Armstrong, 850 F.3d 419, 427 (8th Cir. 2017) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Courts "assess the actions of each officer 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" Id. Nonetheless, "[n]ot every instance of inmate resistance justifies the use of force."    Treats v. Morgan, 308 F.3d 868, 872-73 (8th Cir. 2002).

It is undisputed that on May 9, 2021, Plaintiff had his arm outside of the trap in his cell door.  (Doc. 6 at 4; Doc. No. 41 at ¶ 2).   In his Complaint, Plaintiff claims Defendants opened his cell door and walked in, when Defendant Cobb then began hitting Plaintiff in the face for no reason.  (Doc. No. 6 at 4).   Video footage submitted by Defendants in support of their Motion sheds a different light on the May 9, 2021 incident.   (Doc. No. 41-6; Doc. No. 43).   Plaintiff has not contested the video footage.   As such, the Court may view the facts as depicted in the video. Scott v. Harris, 550 U.S. 372, 378-79 (2007).

One officer's bodycam captured Plaintiff with his arm outside of the trap in his cell door. Plaintiff's arm was out of the door all the way up to Plaintiff's shoulder.  (Doc. No. 43, Axon Body 2 X81467092, at 3:45:03).   Plaintiff's face is just behind the open trap: Plaintiff's face is visible from his eyebrows to below Plaintiff's lower lip.   (Id.)   An officer asked Plaintiff to close the trap.   Plaintiff refused to do so—purportedly because the officer would not give Plaintiff a bag of chips.   (Id. at 3:45:03 – 3:46:07).   The officer then opens the door to Plaintiff's cell.   (Id. at 3:46:07 – 3:46:12).   Once the door is open, Plaintiff stands firmly, defiantly, at the threshold to his cell with both arms down to his side.   (Id. at 3:46:12).   The officer places his hands on the outside of Plaintiff's arms in an attempt to enter the cell.   (Id. at 3:46:12 – 3:46:13).   Officers enter Plaintiff's cell and direct Plaintiff to have a seat.   (Doc. No. 43, Axon Body 2 X81467092, at 3:46:13 – 3:46:23).   Plaintiff continues to stand, now with his arms crossed in front of his chest. (Id. at 3:46:23).   The officer repeats his commands for Plaintiff to have a seat, but Plaintiff remains standing.   (Id. at 3:46:23 – 3:36:25).   Then a scuffle breaks out, but it is not clear from the video how the scuffle began.   (Id. at 3:46:25 – 3:36:27).   The video continues for some time, but it is not clear what is happening.   (Id. at 3:46:27 – 3:47:15).   A voice can be heard saying "Stop swinging."   (Id. at 3:47:15).   The scuffle calms down eventually, and an officer calls for

"cuff." (Doc. No. 43, Axon Body 2 X81467092, at 3:47:15 – 3:47:28). Plaintiff is then cuffed and led outside of his cell. (Id. at 3:47:28 – 3:48: 12).

A different officer's bodycam footage shows the incident after the brawl began. That video depicts two officers in Plaintiff's cell. One officer is standing and watching while another officer (Officer Cobb) is punching Plaintiff. (Doc. No. 43, Axon Body 2 X81468099, at 3:46:33). A third officer enters the cell. (Id. at 3:46:38). Because of the way the officers are standing, the view of Plaintiff is blocked, and the view of the officer hitting Plaintiff becomes blocked. (Id.). An officer calls in a "Code Blue." (Id. at 3:46:42). Eventually, Plaintiff comes back into view. (Id. at 3:46:42 – 3:46:54). Plaintiff's legs are up, and an officer appears to be removing Plaintiff's pants while Plaintiff appears to be kicking at the officer. (Id. at 3:46:54). Plaintiff is resisting, grabbing on to his bunk and maneuvering with his legs. (Doc. No. 43, Axon Body 2 X81468099, at 3:46:54 – 3:47:03). An officer can be heard telling Plaintiff to "stop fighting." (Id. at 3:46:59). A second officer (Officer Thomisee) then grabs onto Plaintiff's legs. (Id. at 3:47:01). Then, once again, bodies block the camera's view and motion blurs the image. (Id. at 3:47:08). When the camera comes back in to focus, it appears that Plaintiff continues to resist and is told again to "stop fighting." (Id. at 3:47:08 – 3:47:15). An additional officer enters Plaintiff's cell, and Plaintiff is told to "cuff up." (Id. at 3:47:21 – 3:47:25). At this point, two officers are holding Plaintiff down, while two other officers are present in Plaintiff's cell. (Doc. No. 43, Axon Body 2 X81468099, at 3:47:23). An officer makes a call saying "Standby, OC spray was used." (Id. at 3:47:32). Plaintiff is brought to a standing position and led out of his cell. (Id. at 3:47:32 – 3:47:49).

Plaintiff then was taken downstairs and was seated at a table. (Id. at 3:48:41). The camera continued to record the conversation going on in the area. At one point, an officer said

that Plaintiff began swinging when the officer entered the cell and hit the officer several times. Plaintiff responded "B***h, you hit me first." (Id. at 3:50:16 – 3:50:25). Plaintiff then received medical attention. (Id. at 3:50:49). Later, Plaintiff is led away and into an elevator. (Doc. No. 43, Axon Body 2 X81468099, at 3:57:25). As Plaintiff is walking into the elevator, an officer says "I don't know why you bowed up on him in the first place." (Id. at 3:57:22). Plaintiff answers: "There could be 20 of you mother*****s and I'm still gonna fight you." (Id. at 3:57:22 – 3:57:34). Plaintiff also said that the mace was the only thing that made him stop. (Id. at 3:57:35). An officer tells Plaintiff that next time, the officers will start with mace; Plaintiff laughs in response. (Id. at 3:57:42).

Some things are clear from the video footage: (1) Plaintiff resisted Defendant Cobb's order to close the trap in Plaintiff's cell door; (2) Plaintiff was defiant and refused Defendant Cobb's order for Plaintiff to take a seat once the cell door was open; (3) Plaintiff resisted Defendant Cobb when Defendant Cobb had Plaintiff on the floor, at least at the times the scuffle was clearly visible; (4) only Defendant Cobb hit Plaintiff; (5) Defendant Thomisee's actions were limited to trying to constrain Plaintiff's legs; and (6) Plaintiff acknowledged that only the chemical spray prompted him to stop fighting.

It is not clear from the video how exactly the scuffle began.

**B.     Heck v. Humphrey**

Defendants argue that Plaintiff's claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994). Pursuant to Heck, a claim for damages based on the invalidity of a conviction, continued imprisonment, or sentence that has not been invalidated is not cognizable. Id. at 486-87. The Supreme Court of the United States explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id.

Claims of excessive force may often proceed without calling into question the underlying conviction. See Colbert v. City of Monticello, Ark., 775 F.3d 1006, 1008 (8th Cir. 2014); Henson v. Brownlee, 2 Fed. Appx. 635, 637 (8th Cir. 2001). Some claims of excessive force, however, are so intertwined with the underlying criminal conviction that Heck will serve as a bar. See Aucoin v. Cupil, 958 F.3d 379, 383 (5th Cir. 2020).

In this civil suit, Plaintiff claims that "all [of the] sudden Sgt. Cobb[] pushed me towards my bed then ran and started hitting me in the face" and "beat [Plaintiff] with closed fist for no reason." (Doc. No. 6 at 4). In his Response to Defendants' Statement of Material Facts, Plaintiff describes the altercation with Defendant Cobb as follows.

[T]his person states I kicked him. You will see in the video that I used my knees to push him up off of me while he was punching me and I used my arms to block his punches and you can sell all this if you look at the video. And when that was all over you could [hear] Lt. Thomisee say stop fighting and you'll [hear] me tell him to stop hitting me. He's the one assaulting me. You can see this []. Now far as the battery conviction now when an officer gets into it with an inmate no matter if [they're] in the wrong they are going to press charges on an inmate and I wasn't going to take it to trial when I got a public defender who is already trying to manipulate me . . . *** But when you [hear] me talking about the assault on me with the Lt., it was cause I was trying to save face because the way I was did []. Every man has pride if [he] don't he ain't no man and you'll [see] I could of done nothing like he say up under the table which Cobbs drug me away from under which I was using to protect my face then were Johnson was told to spray me []. It's all recorded so how can he say self defense []. I should be the one saying I was only responding to reflects when I saw this officer swing his fist to [strike] me over and

over now if Thomisee [].    I hate to be lied on I didn't say everything she says I said but I can only ask you to review which will show what was done on both of our [behalves] and look at this way if this officer was beating you like this do you think you would suffer pain with a broken back.

(Doc. No. 47 at 3) (cleaned up).

Plaintiff's recount of the altercation indicates that Plaintiff's actions toward Defendant Cobb were, as Plaintiff sees it, self-defense.    For example, Plaintiff was using his knees to push Defendant Cobb off of Plaintiff.    And Plaintiff says he was using his arms to block Defendant Cobb's blows.    Additionally, Plaintiff maintains that Defendant Cobb was assaulting Plaintiff, not the other way around.    Plaintiff asserts he should have claimed self-defense: "how can he say self defense [].    I should be the one saying I was only responding to reflects when I saw this officer swing his fist to [strike] me . . . ."    (Id.).    Further, Plaintiff says that he pled guilty because he had "a public defender who [was] already trying to manipulate" Plaintiff—not because Plaintiff was guilty.    Taken together, the essence of Plaintiff's account is that he is innocent of the charge to which he pled guilty.

As mentioned above, Plaintiff was convicted of battery of a law enforcement officer in the second degree, a violation of Ark. Code Ann. § 5-13-202(a)(4).    Under Arkansas law, a person commits battery of a law enforcement officer in the second degree if

> [t]he person knowingly, without legal justification, causes physical injury to or incapacitates a person he or she knows to be: (A) (i) A law enforcement officer, firefighter, code enforcement officer, or employee of a correctional facility while the law enforcement officer, firefighter, code enforcement officer, or employee of a correctional facility is acting in the line of duty.

Ark. Code Ann. § 5-13-202(a)(4)(i).

Whether Plaintiff's excessive force claim is <u>Heck</u>-barred turns on whether "facts actually determined in his criminal conviction[] that were necessary to the judgment of conviction are

incompatible with the claim of excessive force being raised in [this] subsequent civil suit." Sullivan v. Gagnier, 225 F.3d 161, 166 (2nd Cir. 2000).

As set out above, to be guilty of battery in the second degree a person must have caused physical injury to another—without legal justification.  Under Arkansas law, "[b]y statute, a justification, such as self-defense, is considered an element of the offense and, once raised, must be disproved by the prosecution beyond a reasonable doubt."  Thompson v. Sate, 2019 Ark. App. 391, 3-4 (2019).  See also Ark. Code Ann. § 5-2-606 (governing use of physical force in defense of a person).[2]  Plaintiff never raised self-defense in his state criminal proceedings.  Instead,

---

[2] Ark. Code Ann. § 5-2-606 provides:

(a)

  (1) A person is justified in using physical force upon another person to defend himself or herself or a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force by that other person, and the person may use a degree of force that he or she reasonably believes to be necessary.

  (2) However, the person may not use deadly physical force except as provided in § 5-2-607.

(b) A person is not justified in using physical force upon another person if:

  (1) With purpose to cause physical injury or death to the other person, the person provokes the use of unlawful physical force by the other person;

  (2)

    (A) The person is the initial aggressor.

    (B) However, the initial aggressor's use of physical force upon another person is justifiable if:

      (i) The initial aggressor in good faith withdraws from the encounter and effectively communicates to the other person his or her purpose to withdraw from the encounter; and

      (ii) The other person continues or threatens to continue the use of unlawful physical force; or

  (3) The physical force involved is the product of a combat by agreement not authorized by law.

10

Plaintiff pled guilty to the offense of battery in the second degree.    Plaintiff has not indicated that he sought to have the plea set aside or otherwise challenged the plea on any basis.

To determine if Defendant Cobb's use of force was objectively unreasonable under the circumstances, the Court would have to inquire about Plaintiff's actions against Defendant Cobb on May 9, 2021.    See Hooks v. Atoki, 983 F.3d 1193, 1201 (10th Cir. 2020).    "That inquiry would necessarily entail an evaluation of whether and to what extent [Plaintiff] used force against [Defendant Cobb], an inquiry that would take aim at the heart of his criminal plea . . . ."    Id.    As such, accepting as true Plaintiff's assertions here that (1) Defendant Cobb hit Plaintiff for no reason and (2) Plaintiff acted in self-defense against Defendant Cobb is incompatible with Plaintiff's underlying conviction.    If the Court were to accept Plaintiff's position, the outcome in this civil case would necessarily call into question Plaintiff's underlying conviction in his state criminal case, an element of which is that Plaintiff acted with no legal justification.

The Court is not aware of Eighth Circuit precedent finding an excessive force claim Heck-barred based on an underlying conviction of battery under Arkansas law.    The Court is also not aware of Eighth Circuit precedent foreclosing the possibility of that outcome.    Other circuits considering the issue have, in some cases, applied Heck to bar an excessive force claim after the plaintiff was convicted of battery or assault.    Compare O'Brien v. Town of Bellingham, 943 F.3d 514, 529 (1st Cir. 2019) (plaintiff's excessive force claims so factually interrelated with state convictions for resisting arrest and assault and battery that judgment in plaintiff's favor would necessarily imply the invalidity of the convictions); Sisk v. Holden, no. 1:18-cv-00366-MR, 2020 WL 7714713, at *5 (W.D. N.C. Dec. 29, 2020) ("Because self-defense is a defense to this offense, plaintiff's claim that defendant used excessive force in subduing plaintiff necessarily would imply invalidity of underlying conviction for malicious conduct); and Cummings v. City of Akron, 418

F.3d 676, 684 (6th Cir. 2005) (<u>Heck</u> bar where plaintiff pled no contest to assault on defendant)

<u>with</u> <u>Shapard v. Attea</u>, 710 F. App'x 15, 17-18 (2d Cir. 2017) (reconciling the plaintiff's excessive

force claim with the plaintiff's assault of an officer to find no <u>Heck</u> bar); <u>Gilbert v. Cook</u>, 512 F.3d

899, 901 (7th Cir. 2008) (A contention that a guard struck back after being hit is compatible with

<u>Heck</u>."); <u>Benhaim v. Borough of Highland Park</u>, 79 F. Supp. 3d 513, 519 (D.N.J. 2015) (collecting

Third Circuit cases finding no <u>Heck</u> bar); and <u>McCann v. Neilsen</u>, 466 F.3d 619, 622-23 (7th Cir.

2006) (remanding where under one construction of complaint no <u>Heck</u> bar of excessive force claim

of plaintiff convicted of assault).    The Court notes that this analysis is fact specific and must take

into consideration the elements of the underlying criminal offense.

 In <u>DeLeon v. City of Corpus Christi</u>, plaintiff Christopher DeLeon ("DeLeon") pled guilty

to aggravated assault of a police officer.    488 F.3d 649, 651 (5th Cir. 2007).    DeLeon then filed

a civil claim against the officer alleging excessive force, among other things.    The district court

found that DeLeon's excessive claims were <u>Heck</u>-barred.    <u>Id</u>.    In affirming the district court, the

Court of Appeals for the Fifth Circuit cited the following reasoning from an earlier case:

> [The plaintiff] claims that he did nothing wrong, but was viciously attacked for no
> reason.    He provides no alternative pleading or theory of recovery . . . .[The
> plaintiff's] claims are distinguishable from excessive force claims that survive
> *Heck's* bar . . . . [The plaintiff's] suit squarely challenges the factual determination
> that underlies his conviction for resisting an officer. If [the plaintiff] prevails, he
> will have established that his criminal conviction lacks any basis.

<u>Id</u>. at 657 (internal citation omitted).

 "The question for us [here], then, is not whether [Plaintiff] *could have* drafted a complaint

[and response to Defendants' Motion for Summary Judgment] that steers clear of Heck (he could

have), but whether he did." <u>McCann</u>, 466 F.3d at 622.    Plaintiff, just as in the cited language

from <u>DeLeon</u>, alleged that he did nothing wrong—Plaintiff maintains Defendant Cobb hit him for

no reason, and in response to Defendants' Motion for Summary Judgment, Plaintiff says his

actions towards Defendant Cobb were self-defense.   It is the self-defense element of battery as defined under Arkansas law that gives this Court particular pause.  Accepting as true Plaintiff's allegation that Defendant Cobb came into Plaintiff's cell and hit Plaintiff for no reason, a self-defense justification makes perfect sense.   But Plaintiff cannot pursue that defense now, after pleading guilty to a charge containing as an element the lack of legal justification.   Plaintiff's excessive force claim here is inseparable from Plaintiff's conviction for battery in the second degree.   See also <u>Havens v. Johnson</u>, 783 F.3d 776, 782-84 (10th Cir. 2015) (applying <u>Heck</u> to bar § 1983 excessive force claim where plaintiff pled guilty to attempted first-degree assault and did "not argue[] that [the defendant] used excessive force in response to an attempted assault [by the plaintiff]," but contended in his civil case that he did nothing wrong).   And Plaintiff's claim that he pled guilty because of a manipulative defense attorney also calls into question Plaintiff's underlying conviction.   Accordingly, the Court finds that Plaintiff's excessive force claim is <u>Heck</u>-barred and should be dismissed.   Plaintiff's related failure-to-protect claim, then, also fails. As such, the Court will not address Defendants' remaining arguments in support of their Motion for Summary Judgment.   The Court notes, however, that but-for the <u>Heck</u> bar, Plaintiff's claims may have proceeded further.

## V.    Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 39) be GRANTED;

2.      Judgment be entered in Defendants' favor.

Dated this 6th day of September, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE